**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 19-cr-797 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| EUNICE SALLEY, a/k/a EUNICE ) | |
| SALLEY DOBYNS, a/k/a OYA AWANATA- ) | |
| BEY, and a/k/a OYA AWANATA ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant's motions to dismiss the indictment and for other relief [127, 131, 133] to strike stand-by counsel [135] and for other miscellaneous relief [143] are denied in their entirety.

**I.    Background**

    **A.    Pension and Mail Fraud (Counts One through Six)**

According to the Government, Defendant's grandmother Estella Salley ("Estella") died in 2009. Estella had worked for the American Can Company, which was taken over by Rexam (and subsequently taken over by Ball Corporation) and received pension checks delivered to the residence which she and Defendant jointly owned and where both resided. According to Rexam, Estella's pension benefit was payable only during her life, so after her death the monthly pension checks should have stopped. Instead, 39 pension checks, each for $428.24, totaling $16,701, that were issued to Estella Salley between January 2013 and December 2017, were deposited into one of six bank accounts opened and controlled by Defendant.

On at least four occasions between 2010 and 2015, the pension company sent a letter to Defendant's residence that stated as follows: "[t]o ensure that our records are current, the Rexam Retirement Center contacts the Social Security Administration each year to verify that former

Rexam Pension Plan participants and beneficiaries are still living. During our most recent comparison, the above individual [Estella] is listed as deceased by the Social Security Administration." The letter goes on to state "if there has been an error and the person listed above has not passed away, please complete the enclosed Letter of Affidavit, have it notarized, and return it to the Rexam Retirement Center." The letter closes by stating "If no response is received by the Rexam Retirement Center within 30 days, we will assume the Social Security information is correct and update our records accordingly. This will stop any benefits for this individual." In response to these requests for information, Defendant submitted via USPS affidavits under Estella's name, which Defendant notarized, affirming that Estella was still alive.

      **B.**      **Tax Fraud (Counts Seven through Twenty-Nine)**

The Government also alleges that Defendant was a paid tax return preparer who, between 2016 and 2017, prepared and filed with the IRS dozens of false individual income tax returns (Forms 1040), in addition to submitting her own false 2017 income tax return. More specifically, Defendant created false Forms W-2 (Wage and Tax Statement) identifying her clients as employees of one of 4 or 5 businesses owned by other, unsuspecting clients of Defendant or unrelated third parties. According to the Government, the W-2s falsely stated that the client earned substantial wage income from the listed employer and had substantial income taxes withheld from those wages, when in fact the client had not worked for the listed employer, had not received any wages from the employer and the employer had not withheld any income taxes on the purported wages paid to the client. Defendant then prepared tax returns that reported the fictitious wages and withholdings along with false medical, charitable and/or business deductions that resulted in the tax returns claiming a false and fraudulent income tax refunds.

The Government further alleges that in order to increase the likelihood that the IRS would issue the claimed refunds, Defendant submitted a corresponding employer copy of the W-2 to the IRS, through an account she created under the name of another unsuspecting client. This ensured that if the IRS sought to match the employee copy of the W-2s attached to the filed tax returns with the employer copy submitted separately, it would conclude that the W-2s were legitimate and, in many cases, issue the claimed refunds. In many instances the IRS issued the false refunds claimed on the tax returns prepared by Defendant.

The Government maintains that Defendant demanded that many of her clients pay her up to 50% of the refund in cash for her role in preparing their tax returns in addition to her regular preparation fee. Some clients complied and Defendant failed to report approximately $45,000 in income she received in 2017 as her share of the fraudulently obtained tax refunds as well as the approximately $4,000 in pension checks that she embezzled.

## II. Procedural History

On October 22, 2019, Defendant was charged by criminal complaint for committing mail fraud, in violation of 18 U.S.C. § 1341. On November 5, 2019, Defendant was charged by indictment with one count of mail fraud in violation of 18 U.S.C. § 1341, and five counts of theft from an employee benefit plan, in violation of 18 U.S.C. § 664. On July 30, 2020, Defendant was charged in a superseding indictment with 15 counts of aiding and abetting the filing of false tax returns, in violation of Title 26 U.S.C. § 7206(2), and one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1). A second superseding indictment was returned on November 12, 2020, charging Defendant with an additional seven counts of aiding and abetting the filing of false tax returns in violation of 26 U.S.C. § 7206(2).

On January 21 and February 10, 2021, Defendant filed motions to dismiss the indictment [127, 131[1]]. Defendant also appears to move to suppress evidence seized during the execution of a search warrant at her home and seeks other relief as well. Defendant has exercised her right to represent herself and has filed these motions *pro se*. The Court has appointed standby counsel.

## III. Discussion

### A. Diplomatic Immunity

As an initial matter, Defendant claims to be a Sovereign Citizen who espouses a belief that she is not a citizen of the United States and is not subject to the jurisdiction of this Court. Her motions begin by demanding that the Court "obtain diplomatic records from the State Department" which would "prove [diplomatic] immunity." It appears that Defendant is referring to a "diplomatic" passport in her name from a fictitious country named Al Moroccan. The Government notes that in 2016, a form titled, "Notification of appointment of foreign diplomatic officer and career council of office" and accompanied by a diplomatic passport purportedly from the country of Al Moroccan Empire National Republic was sent to the State Department that appeared to be signed by Defendant. These documents do not confer diplomatic immunity or any other rights or benefits upon Defendant, and any argument to the contrary is frivolous. Defendant's demands that the Government produce, and the Court defer to, these documents is denied.

### B. Selective and Vindictive Prosecution

Defendant also claims that this case should be dismissed because she is a victim of selective and vindictive prosecution. "[S]elective prosecution requires a showing that the defendant '(1) ... [was] singled out for prosecution while other violators similarly situated were not prosecuted; and (2) the decision to prosecute was based on an arbitrary classification such as race, religion, or the

---

[1] Docket entry [133] is a duplicate of [131].

exercise of constitutional rights.'" *United States v. Monsoor*,77 F.3d 1031,1033 (7th Cir. 1996) (citing *United States v. Cyprian,* 23 F.3d 1189, 1195 (7th Cir. 1994). Defendant's claim in this instance is entirely conclusory. She fails to present any evidence or analysis that would support her assertion that she is being prosecuted based on an arbitrary classification or that she is being singled out while others were not prosecuted for the same offense. Absent a prima facie case, this contention can be rejected without a hearing.

Defendant's claim of vindictive prosecution in retaliation for the filing by Defendant of multiple civil *Bivens* actions the prosecutors and case agents assigned to this matter and others not even involved in the case[2] fares no better. "A vindictive prosecution is one 'motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication.'" *United States v. Masoud*, No. 18 CR 203, 2019 WL 4412796 at *1 (N.D. Ill. Sept. 16, 2019), citing *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003). "As long as there is probable cause to support a charge, the decision whether or not to prosecute, and what charge to file or bring before a grand jury generally rests entirely in the prosecutor's discretion." *United States v. Johnston*, No. 17 CR 517, 2018 WL 8786165, at *2 (N.D. Ill. Sept. 13, 2018) (citing *United States v. Ribota*, 792, F.3d 837 (7th Cir. 2015)). While "[t]here is a presumption of vindictiveness where a prosecutor chooses to seek more severe charges after a defendant has exercised his rights," but "the Seventh Circuit has never found such a presumption arising from pretrial events." *Id.* In other words, decisions of the Seventh Circuit "have not recognized any

---

[2] On July 14, 2020, approximately two weeks prior to the first superseding indictment in which the tax charges were brought, Defendant filed a *Bivens* action against the FBI case agent (20-CV-4188), which set forth allegations pertaining to the execution of the search warrant. This action is still active. On August 11, 2020, Defendant filed a second *Bivens* action against the case agent and others (20-CV-4734). This case has been dismissed. On August 11, 2020 (20-CV-4735), September 22, 2020 (20-CV-5674), November 24, 2020 (20-CV-6994), and December 9, 2020 (20-CV-7393), Defendant filed *Bivens* actions against the prosecutors and others who are not part of the prosecution team. All of the lawsuits, with the exception of the most recent (20-CV-7393), have been dismissed.

circumstances in which a presumption of vindictiveness has been deemed appropriate regarding events that occurred before trial." *United States v. Ribota*, 792 F.3d 837, 840 (7th Cir. 2015).

Here, there is no trial date even on the horizon, in part due to the pandemic and in part as a consequence of Defendant's obstreperous conduct that is well reflected in the minute entries and transcripts of proceedings. Moreover, any suggestion of vindictiveness on the part of the prosecutors is belied by the Government's notification as early as October 2019—well in advance of the filing of the first *Bivens* action—that the supposedly vindictive tax charges were likely to be brought against Defendant. In short, Defendant's assertion that the additional tax counts were filed in retaliation for her *Bivens* actions or for any other improper purpose is simply not supported by the timeline of events.[3]

### C. Indictment and Grand Jury Proceedings

Defendant's conclusory arguments for dismissal based on alleged flaws and irregularities in the grand jury process also are unavailing. The Government represents that it has provided multiple grand jury transcripts to Defendant in discovery, none of which Defendant cites in support of any deficiency in the process.

In regard to the absence of signatures on the indictments, it is the practice in this district to not publicly file the signed indictment in order to protect the identity of the foreperson. In any event, even if this practice were questionable or even improper, any failure of either the United State Attorney or the grand jury foreperson to sign the indictment would not invalidate the indictments themselves. See, *e.g.*, *United States v. Wright*, 365 F.2d 135, 137 (7th Cir. 1966) ("[T]he signature of the prosecuting attorney is not an essential part of the information; nor is

---

[3] Defendant's additional arguments referring to an individual named Jesse Kane Bray and her contentions that fraudulent documents that do not contain her signature were presented to the grand jury are unsupported and nonsensical and thus are rejected.

improper signing of the instrument a defect such as to invalidate it."); *Hobby v. United States*, 468 U.S. 339, 345 (1984) ("Even the foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment.") (citing *Frisbie v. United States*, 157 U.S. 160, 163–165 (1895)).

Defendant also alleges—again without any supporting facts or legal argument—that the Government engaged in an "illegal selection or organization of the grand jury, disqualification of individual grand jurors, presence of unauthorized persons in the grand jury" and "other irregularities." But even if there had been irregularities in the grand jury, that is not a basis for dismissing the indictment unless Defendant can show prejudice, which she has not. As the Supreme Court has explained, "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).

### D.  Name on Arrest Warrant and Indictment

Defendant further argues that the arrest warrant is not in her lawful name and that, therefore, she is being "unlawfully detained." Fed. R. Crim. P. Rule 4(b)(1)(A) states that an arrest warrant must "contain the defendant's name or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty." Under Seventh Circuit law, "[a]n arrest warrant that correctly names the person to be arrested generally satisfies the fourth amendment's particularity requirement, and no other description of the arrestee need be included in the warrant." *Powe v. City of Chicago*, 664 F. 2d 639, 645 (7th Cir. 1981). Here, the arrest warrant was issued in the name "Eunice Salley," which is the defendant's given name and the name she used when she committed the offenses for which she has been charged, neither of which the defendant has denied. The arrest warrant also identified her known aliases to include Oya Awanata, the name

7

she currently uses, as well as her address, date of birth, height, weight, sex, race, and hair and eye colors. This information was sufficiently particularized to identify Defendant for purposes of her arrest.

The indictments, too, were legally sufficient. The initial indictment was returned under the name Eunice Salley a/k/a Eunice Salley-Dobbins and Oya Awanata-Bey. The superseding indictments added the name Oya Awanata as another a/k/a used by Defendant. The Government states that the indictment is led by the name Eunice Salley because that is the only name Defendant used when she committed her offenses, including after she legally changed her name from Eunice Daniel Salley Dobyns to Owa Awanata Bey on April 13, 2017.[4]

Defendant also complains about the order in which her names are used and moves to strike any alias as surplusage because they are used to "inflame and are not relevant to the charged crimes." However, "[w]hen proof of an alias is relevant to identifying the defendant, or otherwise relates to the proof of the acts charged in the indictment" it is permissible for the prosecution to include it in the indictment. *United States v. Williams*, 739 F.2d 297, 299 (7th Cir. 1984). To the extent that Defendant believes one or more of the aliases is more prejudicial than probative, she may move in limine to prevent its use at trial. *Id*. The Government already has indicated its willingness to strike certain aliases (Eunice Salley Dobyns and Oya Awanata-Bey) that do not appear to have been used in the commission of the charged offenses. Any further assessment of the aliases will be deferred until trial.

---

[4] On July 6, 2017 (Count Five), and December 4, 2017 (Count Six), months after Defendant changed her name, she misappropriated her grandmother's pension checks by depositing them into bank accounts held under the name Eunice D. Salley. On May 6, 2017 (Count 12), November 6, 2017 (Count 22) and April 15, 2018, (Count 24), Defendant prepared and filed false tax returns on behalf of clients in which the name Eunice Salley appeared on the paid preparer line. On May 18, 2018, she signed and filed her own false 2017 tax return with the IRS in the name Eunice Salley (Count 29).

### E. Failure to Provide Written Notice of Court Dates and Hearings

Defendant's claims that the prosecution has failed "to give written notice of court dates, hearings and failed to file notices and certificate of services for each" are not well taken. To begin, the Government is under no obligation to provide the defendant with written notice of any court dates or hearings. Moreover, the docket reveals that the Court has issued orders after every court appearance, whether Defendant appeared or not, and has attempted to send Defendant copies of certain orders that Defendant herself has rejected and sent back to the Court.

### F. Multiplicity

Defendant argues that the indictment is "multiplictious." An indictment is multiplicitious if it charges a single offense in multiple counts. "The purpose of this rule is to prevent multiple punishments for the same act, in violation of the Double Jeopardy Clause of the Fifth Amendment." *United States v. Snyder*, 189 F.3d 640, 647 (7th Cir. 1999). "If the same act or transaction violates two distinct statutes, then punishment for violation of both statutes violates the double jeopardy clause unless each offense requires proof of a fact not required by the other." *United States v. Stavros*, 597 F.2d 108, 112 (7th Cir. 1979) (citations omitted). "The test for multiplicity looks to "whether each provision requires proof of a fact which the other does not." *United States v. Esfahani*, No. 05 CR 0255, 2006 WL 163025, at *4 (N.D. Ill. Jan. 17, 2006) (citations omitted). This argument, too, misses the mark because each count involves a separate and distinct act from every other count, making each count its own unit of prosecution. See *United States v. Moses*, 513 F.3d 727, 732 (7th Cir. 2008).

### G. Statute of Limitations

Defendant also appears to advance a statute of limitations argument. The Government has 30 days after an arrest to indict a defendant. See 18 U.S.C. § 3161(b). Here, Defendant was

arrested on October 23, 2019, and indicted on November 5, 2019, well within the thirty-day time limit. The criminal conduct charged in Counts One through Six occurred between December 30, 2015, and January 4, 2017. The statute of limitations for those counts is five years. See 18 U.S.C. § 3282(a). Defendant was charged by indictment for these counts on November 5, 2019, well within the five year' statute of limitations. Finally, the criminal conduct charged in Counts Seven through Twenty-Two occurred between June 25, 2016 and May 8, 2018. The statute of limitations for Title 26 offenses is six years from the filing of the false tax return. See 26 U.S.C. § 6531. Defendant was charged by indictment for these counts on November 12, 2020, well within the six year' statute of limitations. In short, any statute of limitations argument fails.

### H. Search Warrant

In her first motion, Defendant refers to the suppression of an "illegal search" but does not identify a particular search or any defects in the search warrants. In her second motion, Defendant focuses her argument on the search of her home. Defendant argues that the search of her home was "illegal because she had a reasonable expectation of privacy" and that the "search was conducted without a warrant, any exigent circumstances justifying a warrantless search, and without any valid consent to conduct a warrantless search." [131 at 3.]. This is incorrect. The search of Defendant's home on October 23, 2019 was conducted pursuant to a valid search warrant that was sworn out before, and signed by, Magistrate Judge Valdez. See Case No. 19 M 712.

### I. Motion to Strike Stand-By Counsel

Defendant also has filed a separate motion [135] asking the Court to remove stand-by counsel. That motion is denied. Stand-by counsel has been appointed at this stage of the case to familiarize himself with the matters at issue should the case proceed to trial and to assist Defendant in regard to pre-trial matters should she seek his assistance. As the Court has previously advised,

stand-by counsel also is necessary in this case given Defendant's proclivity to challenge the Court's jurisdiction and to assert other frivolous positions associated with the sovereign citizen movement. See, e.g., *United States v Benabe*, 654 F.3d 753, 766-67 (7th Cir. 2011); *United States v. Mack*, 2013 WL 4495641, at *1- *4 (N.D. Ill. Aug. 21, 2013). As the Supreme Court of the United States has explained, a trial court "may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).[5]

## IV. Conclusion

For the foregoing reasons, Defendant's motions to dismiss the indictment and for other relief [127, 131, 133] to strike stand-by counsel [135] and for other miscellaneous relief [143] are denied in their entirety.

Dated: April 28, 2021

Robert M. Dow, Jr.
United States District Judge

---

[5] Defendant has advanced additional arguments based on the sufficiency of the indictment as well as under Amendments 8, 9, 10, 11, 13, and 14 of the Constitution and two civil rights statutes. The Court has reviewed these arguments, all of which are so clearly lacking in merit that they can be denied without analysis or explanation. In her most recent filing [143], Defendant repeats many of her prior arguments. To the extent those arguments raise non-frivolous requests or objections, they are addressed above. Some of her requests, including those that charge prosecutorial misconduct or ask the Court to initiate a federal claims complaint, are completely unsupported by fact or law and thus are rejected without explanation. To the extent that Defendant requests the production of certain materials, the Court understands the Government to have represented that it has complied with all of its discovery obligations under the Federal Rules of Criminal Procedure and will continue to do so at every stage of the case. With that understanding, the requests for information are denied without prejudice as moot.

11